UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LEONARD R. LAMBERT,<br><br>Plaintiff,<br><br>v.<br><br>STEPHANIE GIVENS; MARK WORTH; MICHAEL G. SCHMIDT, ESQ.; COREY D. METZNER, ESQ.; LUKINS & ANNIS, P.S.; ABC MANAGEMENT, LLC; SUNSHINE MEADOW OWNERS ASSOCIATION, INC.; DANIEL STUBBS; CHAD OAKLAND; MILLER DEVELOPMENT GROUP, LLC; HALLMARK HOMES; KOOTENAI TITLE COMPANY; PETER J. SMITH IV; MALEK & MALEK, PLLC (Successor to Smith & Malek, PLLC); and JOHN DOES 1-10,<br><br>Defendants. | Case No. 2:25-cv-00662-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are several motions to dismiss filed by Defendants.[1] Specifically, before the Court are Defendant Lukins & Annis, P.S.'s Motion to Dismiss, as joined by Defendants Corey D. Metzner and Michael G. Schmidt and later supplemented by the amended filing directed

---

[1]    Although Sunshine Meadow Owners Association, Inc. (SMOA) was named in the original Complaint, Plaintiff's First Amended Complaint does not name SMOA as a defendant in the caption or party allegations. The First Amended Complaint instead alleges conduct by SMOA leadership and SMOA-related actors as part of the alleged association-in-fact enterprise. The Court analyzes the federal RICO claim as pleaded against the Defendants named in the First Amended Complaint and, to the extent any RICO theory is asserted against SMOA-related actors, it fails for the reasons explained below. And because the RICO claim fails, the Court does not separately address the propriety of omitting SMOA as a party in the First Amended Complaint.

**MEMORANDUM DECISION AND ORDER - 1**

at Plaintiff's First Amended Complaint (Dkts. 31, 43, 48, 58, 61, 62); Defendants Peter J. Smith IV and Malek & Malek, PLLC's Motion to Dismiss the First Amended Complaint (Dkt. 57); Defendant Kootenai Title Company's Motion to Dismiss the First Amended Complaint (Dkt. 60); Defendant Hallmark Homes' Motion to Dismiss the First Amended Complaint and Notice of Joinder (Dkt. 70); and Defendant Mark Worth's Motion to Dismiss the First Amended Complaint (Dkt. 73). Also pending are Plaintiff's numerous procedural motions and requests for entry of default (Dkts. 2, 4, 18, 21, 22, 64, 65, 66, 67, 68, 69).

Having reviewed the record and the parties' submissions, the Court finds that the facts and legal argument are adequately presented and that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court grants the motions to dismiss to the extent they challenge Plaintiff's federal RICO claim, dismisses that claim without prejudice as to all Defendants, declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and denies all remaining pending motions as moot.

## I.    BACKGROUND

Plaintiff brings this action arising from his purchase and construction of a home in the Prairie Trails subdivision in Kootenai County, Idaho. In broad terms, Plaintiff alleges Defendants participated in an unlawful scheme involving the Prairie Trails' covenants, conditions, and restrictions; the asserted annexation of Prairie Trails into the Sunshine Meadow Owners' Association; HOA enforcement communications; real-estate and title-related representations; and prior state-court litigation concerning the same property-related disputes (Dkt. 54).

He names numerous defendants, including individuals and entities associated with property management, real estate development, construction, title services, legal representation, and prior

MEMORANDUM DECISION AND ORDER - 2

HOA-related litigation (*id*.). Plaintiff alleges a federal civil RICO claim under 18 U.S.C. § 1962(a)–(d), as well as claims labeled fraud/fraudulent misrepresentation, malicious prosecution, abuse of process/fraud on the court, civil conspiracy, negligence/negligent misrepresentation, intentional infliction of emotional distress, and Idaho Consumer Protection Act violations (Dkt. 54 at 1).

Plaintiff filed his original Complaint on November 19, 2025 (Dkt. 1). Several Defendants responded to the original Complaint by filing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Dkts. 28, 29, 31, 37, 50, 52). Plaintiff filed his First Amended Complaint on December 31, 2025 (Dkt. 54). Because Plaintiff filed the First Amended Complaint within twenty-one days after service of the first responsive pleading and within twenty-one days after service of several Rule 12 motions, the amendment was permitted as a matter of course under Rule 15(a)(1)(B). The First Amended Complaint is therefore the operative pleading.

After Plaintiff filed the First Amended Complaint, several Defendants filed renewed or amended motions to dismiss directed at that pleading (Dkts. 57, 58, 60, 70, 73). Other Defendants answered the First Amended Complaint (Dkts. 72, 75, 77). Plaintiff did not file any briefs in response to Defendants' motions. Rather, on March 25, 2026, Plaintiff filed a Notice of Supplemental Filing Regarding Recorded Instrument (Dkt. 78). In that Notice, Plaintiff submitted a recorded "Agreement to Void Prairie Trail Covenants, Conditions, and Restrictions" and stated that he did "not seek to re-brief the pending Motions to Dismiss" but instead submitted the filing "solely to provide relevant record material for the Court's consideration" (Dkt. 78 at 2). That filing is not a response brief under Local Rule 7.1.

Plaintiff asserts federal-question jurisdiction under 28 U.S.C. § 1331 based on his federal RICO claim under 18 U.S.C. §§ 1961–1968. He also invokes 18 U.S.C. § 1964(c), alleging injury

MEMORANDUM DECISION AND ORDER - 3

to his business or property by reason of Defendants' alleged violations of § 1962(c) and (d). Plaintiff asserts supplemental jurisdiction over his related state-law claims under 28 U.S.C. § 1367(a). Because resolution of Plaintiff's federal RICO claim resolves the federal portion of this case, the Court focuses its analysis on that claim.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." A court must consider the complaint in its entirety. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Rule 8 requires a complaint to include a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To avoid dismissal under Rule 12(b)(6), a complaint must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation modified); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (reiterating "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). "A Rule 12(b)(6) dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation modified).

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–96 (9th Cir.

MEMORANDUM DECISION AND ORDER - 4

2014) (quoting *Iqbal*, 556 U.S. at 679). "First a court should identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 996 (citation modified). Second, "a court should assume the veracity of well pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief." *Id.* (citation modified). Where a complaint pleads facts which are merely consistent with the defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. 662, 678 (2009).

## III.   ANALYSIS

Plaintiff's failure to file any opposition brief or seek leave to amend in response to the pending motions directed at the First Amended Complaint supports granting those motions under this District's local rules. Because Plaintiff proceeds pro se, however, the Court liberally construes his filings. Even under that liberal construction, however, Plaintiff must allege facts sufficient to state a plausible claim for relief and must plead fraud-based allegations with the particularity as Rule 9(b) requires. He has not met these standards. Consequently, Plaintiff has not pleaded a plausible federal RICO claim, and the Court cannot rewrite Plaintiff's pleading or supply missing factual allegations. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses this action without prejudice.

### A.   Failure to Respond

As a threshold matter, Plaintiff did not file any opposition brief or seek leave to amend in response to the pending motions to dismiss directed at the First Amended Complaint. Under Local Rule 7.1(f), "[i]f an adverse party fails to timely file any response documents required to be filed under this rule, such failure may be deemed to constitute a consent to the sustaining of said

pleading or the granting of said motion or other application." Dist. Idaho Loc. Civ. R. 7.1(f). Specifically, Plaintiff timely exercised his right under Rule 15(a)(1)(B) to amend his pleading in response to the Rule 12 motions directed at his original Complaint. The filing of the First Amended Complaint therefore served as Plaintiff's response to those original motions and rendered Dkts. 28, 29, 31, 37, 50, and 52 moot. After Plaintiff filed the First Amended Complaint, however, several Defendants filed renewed or amended motions directed at that operative pleading. Plaintiff did not file any opposition brief or seek leave to amend in response to Defendant Lukins & Annis, P.S.'s Motion to Dismiss, as supplemented by Dkt. 58 and joined at Dkts. 61 and 62, or in response to Dkts. 57, 60, 70, and 73. As explained below, the First Amended Complaint does not cure the deficiencies in Plaintiff's case.

Plaintiff's Notice of Supplemental Filing does not alter that conclusion (Dkt. 78). Plaintiff expressly stated in that filing that he did "not seek to re-brief the pending Motions to Dismiss" and submitted the attached recorded instrument only as supplemental material (*id*. at 2). The Notice is not a response brief and does not address the legal arguments raised in the motions to dismiss. Additionally, to the extent Plaintiff submits the recorded instrument as new factual material, the Court does not consider it for the truth of Plaintiff's characterizations or inferences on Rule 12(b)(6) review. At most, the Court may consider the existence and contents of a publicly recorded instrument to the limited extent permitted by the judicial notice and incorporation-by-reference doctrines. Even then, however, Plaintiff does not cure the pleading deficiencies discussed below.

## B.      Federal RICO Claim

Plaintiff asserts a federal RICO claim and alleges that Defendants collectively participated in a scheme involving recorded real-property documents, alleged annexation defects, HOA

MEMORANDUM DECISION AND ORDER - 6

enforcement activity, demand letters, real-estate/title documents, and litigation concerning Prairie Trails. Plaintiff alleges Defendants used the mail and wires in furtherance of that scheme in violation of 18 U.S.C. §§ 1341 and 1343 (Dkt. 54). The mail and wire fraud statutes are identical except for the particular method of fraud dissemination and contain three elements: (A) formation of a scheme to defraud, (B) use of the mails or wires in furtherance of that scheme, and (C) specific intent to defraud. *Eclectic Properties East, LLC*, 751 F.3d at 997.

Although the first page of the First Amended Complaint invokes § 1962(a)–(d), the substantive RICO counts assert claims under § 1962(c) and § 1962(d). To the extent Plaintiff intended to assert separate claims under § 1962(a) or § 1962(b), the First Amended Complaint does not allege an injury caused by the "use" or "investment" of racketeering income, as required for a § 1962(a) claim, or facts showing that any Defendant "acquir[ed]" or "maintain[ed]" an interest in or control of an enterprise through racketeering activity, as required for a § 1962(b) claim. Plaintiff's substantive RICO theory is instead directed primarily at Defendants' alleged participation in an association-in-fact enterprise through mail and wire fraud, which is governed by § 1962(c). Section 1962(d) separately prohibits conspiring to violate § 1962(a), (b), or (c), but because Plaintiff fails to plausibly allege a substantive RICO violation, his conspiracy claim also fails.

To state a claim under § 1962(c), a plaintiff must allege (1) conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity, i.e., predicate acts, (5) proximately causing the victim harm. *Eclectic Properties East, LLC*, 751 F.3d at 997. That is, under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of

**MEMORANDUM DECISION AND ORDER - 7**

unlawful debt." 18 U.S.C. § 1962(c). RICO was "intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005). Even so, the statute is to "be liberally construed to effectuate its remedial purposes." *Odom v. Microsoft Corp.*, 486 F.3d 541, 546 (9th Cir. 2007) (en banc). The moving Defendants challenge, among other things, Plaintiff's allegations regarding an enterprise, a pattern, racketeering activity, and proximate causation. Because Plaintiff fails to plead an enterprise and predicate acts, the Court need not reach pattern or proximate causation.

  **1.  Enterprise**

  Plaintiff has failed to plausibly allege Defendants acted together as a cohesive RICO enterprise. To allege an enterprise, a plaintiff must plead that the enterprise has (1) a common purpose, (2) a structure or organization, and (3) longevity necessary to accomplish the purpose. *Eclectic Properties East, LLC*, 751 F.3d at 997. An enterprise can be a loose-knit group of people or entities, which is referred to as an "association-in-fact" enterprise. "An association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Odom*, 486 F.3d at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "To establish the existence of such an enterprise, a plaintiff must provide both evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit." *Id.* (citation modified). In other words, the complaint must allege more than parallel conduct, overlapping business relationships, or a series of acts involving the same subject matter. *See Boyle v. United States*, 556 U.S. 938, 947 n.4 (2009) (explaining that individuals who independently engage in predicate acts, without coordination, are not necessarily members of an enterprise).

**MEMORANDUM DECISION AND ORDER - 8**

Plaintiff's First Amended Complaint does not satisfy this standard. Plaintiff alleges an association-in-fact enterprise among "development, sales, title, HOA, management, and counsel defendants," and asserts that Defendants shared a common purpose "to manufacture, normalize, and enforce Sunshine Meadow HOA governance over Prairie Trails properties despite known annexation defects, missed contractual deadlines, sworn internal admissions, and material nondisclosure to purchasers at the time of sale" (Dkt. 54 at 49). But that formulation merely supplies a litigation label for Plaintiff's theory of wrongdoing. It does not plead nonconclusory facts showing that the developer, realtor, builder, title company, HOA representatives, property manager, attorneys, and law firms operated as a continuing unit with a shared illicit objective.

Plaintiff also alleges that Defendants operated through a "division of labor," assigning development, sales, closing, HOA leadership, property-management, and legal-enforcement roles to different participants (*id.* at 50-51). But those alleged divisions correspond to Defendants' ordinary commercial, professional, title, property-management, HOA, and legal roles; they do not supply nonconclusory facts showing a RICO enterprise distinct from those ordinary relationships.

On the contrary, Plaintiff alleges that development-related defendants created, recorded, or attempted to enforce subdivision and annexation-related documents; sales and construction Defendants participated in Plaintiff's purchase and construction of his home; the title company handled closing and title-related communications; HOA and property-management defendants pursued enforcement, dues, notices, and execution of proposed agreements; and attorney Defendants sent correspondence, proposed legal strategies, and participated in litigation or pre-litigation efforts (*id.* at 4–24, 49–51). Even assuming Plaintiff believes those actions were wrongful or fraudulent, the alleged facts show, at most, that each Defendant acted within a separate commercial, property-management, title, sales, construction, or legal role connected to the same

**MEMORANDUM DECISION AND ORDER - 9**

HOA-governance dispute. RICO requires more. It requires facts plausibly showing that Defendants "participated in the operation or management of the enterprise itself," not merely their own affairs or the affairs of their own clients, businesses, or principals. *See Reves v. Ernst & Young*, 507 U.S. 170, 183, 185 (1993).

The First Amended Complaint's added defendant-specific labels do not cure this defect.[2] Plaintiff repeatedly describes Defendants as having performed roles such as "operational arm," "execution facilitation," "legal instrumentation," "scheme architect," and "post-notice continuity." But those labels are conclusory. Stripped of those characterizations, the allegations describe a developer, HOA representatives, a property manager, attorneys, a title company, a builder, and sales-related actors performing discrete functions in connection with recorded documents, HOA governance, property sales, title or closing matters, demand letters, settlement efforts, and litigation. Those allegations do not plausibly show a structure, decision-making mechanism, or continuing unit distinct from Defendants' ordinary relationships and roles.

Nor does Plaintiff plausibly plead a common purpose. Plaintiff alleges that Defendants all contributed to the enforcement of SMOA authority over Prairie Trails, but a common effect or common subject matter is not the same thing as a common RICO purpose. Plaintiff must allege facts supporting a reasonable inference that each Defendant was aware of the essential nature and scope of the alleged enterprise and intended to participate in it. *See United States v. Christensen*, 828 F.3d 763, 780 (9th Cir. 2015). The First Amended Complaint does not do so. It alleges that different actors, at different times, performed discrete functions related to recorded covenants,

---

[2]    Plaintiff's amendment added factual allegations and attempted to recast the alleged property dispute as a RICO enterprise, but those additions are insufficient. *See Wittwer v. J&J Development, LLC*, Case No. 2:25-cv-00395-AKB, at 15–16 (D. Idaho Apr. 16, 2026). Unlike *Wittwer*, however, Plaintiff proceeds pro se; accordingly, the Court dismisses the federal RICO claim without prejudice.

MEMORANDUM DECISION AND ORDER - 10

closing documents, HOA communications, settlement demands, notarization, and litigation. Those allegations are consistent with a local property and HOA dispute involving multiple participants with different legal and commercial interests. They do not plausibly show that all Defendants shared the same fraudulent objective, agreed to advance that objective, or coordinated their conduct through an enterprise distinct from their ordinary relationships.

The structure allegations are likewise deficient. Plaintiff does not allege who directed the enterprise, how decisions were made, how Defendants coordinated across their separate roles, how the alleged members communicated to advance a shared racketeering objective, or how proceeds or benefits were distributed among them. Instead, Plaintiff assigns conclusory "structure" labels— such as "operational arm," "execution facilitation," "legal instrumentation," "strategy," and "post-notice continuity"—to conduct that is otherwise described as property management, HOA administration, closing activity, real estate development, sales, construction, attorney correspondence, and litigation activity. Adding labels does not transform ordinary professional or commercial relationships into a RICO enterprise (or satisfy Rule 9(b)). *See In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (concluding that "without the adjectives," allegations consistent with ordinary business conduct and purpose did not state a RICO enterprise).

Plaintiff's allegations also do not establish the required longevity. While his theory spans several years, the mere passage of time does not establish an association-in-fact enterprise. The complaint must allege that Defendants functioned as a continuing unit long enough to accomplish the enterprise's purpose. *Eclectic Properties East, LLC*, 751 F.3d at 997. Plaintiff's timeline instead strings together the 2017 annexation dispute, Plaintiff's later property purchase and closing, subsequent HOA enforcement communications, and later litigation activity. Those events

**MEMORANDUM DECISION AND ORDER - 11**

may be historically related, but the complaint does not plead nonconclusory facts showing that the same group of Defendants operated over that period as a coordinated unit with a stable structure and shared criminal purpose.

Accordingly, the First Amended Complaint alleges, at most, that Defendants participated in a series of ordinary business, real-estate, HOA, title, and legal activities that Plaintiff characterizes as fraudulent. Conclusory, adjective-laden allegations are insufficient to plead a RICO enterprise. Because Plaintiff has not plausibly alleged a common purpose, a structure or organization, or that Defendants functioned as a continuing unit, his § 1962(c) claim fails at the enterprise element.

### 2.    Racketeering Activity & Predicate Acts

Plaintiff has also failed to allege any predicate acts of mail or wire fraud with the particularity Rule 9(b) of the Federal Rules of Civil Procedure requires. Racketeering activity is any act indictable under several provisions of Title 18 of the United States Code, including the predicate acts of mail fraud and wire fraud. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). Mail fraud and wire fraud require a scheme to defraud, use of the mails or wires in furtherance of the scheme, and specific intent to defraud; a RICO claim predicated on mail or wire fraud, as here, is subject to Rule 9(b)'s heightened pleading standard. *Odom*, 486 F.3d at 554 ("The only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself."); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) ("[Rule 9(b)] requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme" and "[t]he Ninth Circuit has repeatedly insisted that this rule be followed in RICO actions alleging the predicate act of mail fraud.").

**MEMORANDUM DECISION AND ORDER - 12**

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," and the circumstances constituting the alleged fraud must be "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). "The pleader must state the time, place, and specific content of the false representations" and "the identities of the parties to the misrepresentation." *Odom*, 486 F.3d at 553. Further, Rule 9(b) "does not allow a complaint to lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (holding Rule 9(b) requires plaintiffs to inform each defendant separately of allegations surrounding their alleged participation in fraud).

Plaintiff's First Amended Complaint includes a section labeled "Pattern of Racketeering Activity," which groups alleged conduct into "Predicate Acts 1–14" (Dkt. 54 at 53–56). Those alleged predicates fall into four general categories: (1) development and recording activity from 2016 and 2017, including the Development Agreement, the Affidavit of Scrivener's Error, and the Declaration of Annexation; (2) sales-stage nondisclosure and alleged inducement, including marketing materials and pre-closing communications; (3) title and closing documentation, including the pre-closing and revised Borrower's Settlement Statements; and (4) post-closing enforcement communications, including the "Clouded Title" letter, the "Sign or Be Sued" letter, and the June 2022 agreement-related communications (*id.*). Although these allegations provide a chronology of Plaintiff's property dispute, they do not plead mail or wire fraud predicates with Rule 9(b) particularity.

First, the development-and-recording allegations do not identify discrete mail or wire fraud predicates. Plaintiff alleges that MDG and Stubbs executed a Development Agreement, that Oakland later executed an Affidavit of Scrivener's Error, and that Stubbs later executed or recorded a Declaration of Annexation (Dkt. 54 at 53–54). But the First Amended Complaint does not identify a specific fraudulent mailing or wire transmission for each alleged predicate act, the sender and recipient of that communication, the precise false statement transmitted by mail or wire, or why that statement was false when made. Instead, the First Amended Complaint alleges that documents were "transmitted by mail and wire in the ordinary course of development, title, and legal activity" and "through mail and recording systems" (*id*.). That formulation is too generalized to plead mail or wire fraud because it does not identify the particular fraudulent use of the mail or wires or the role of each Defendant in that use.

Second, the sales-stage allegations do not cure the defect. Plaintiff alleges that Hallmark, MDG, and Oakland marketed Prairie Trails properties without disclosing SMOA governance or annexation uncertainty, that marketing materials omitted SMOA, and that Plaintiff later received closing documents that allegedly contradicted his pre-closing understanding (*id.* at 54). But these allegations again do not identify the specific fraudulent communication, who sent it, who received it, when it was sent, how it was transmitted, the precise statement or omission alleged to be fraudulent, why the speaker had a duty to disclose the omitted information, or facts supporting an inference that each identified Defendant acted with specific intent to defraud. The First Amended Complaint instead asks the Court to infer fraud from alleged nondisclosure during the sales process and from Plaintiff's later disagreement with the asserted HOA governance structure. Rule 9(b) requires more.

**MEMORANDUM DECISION AND ORDER - 14**

Third, the title-and-closing allegations identify Kootenai Title and two settlement statements, but they still do not plead a RICO predicate with particularity. Plaintiff alleges that Kootenai Title transmitted one pre-closing settlement statement that did not disclose HOA charges and a revised closing statement that introduced SMOA charges (*id.* at 54–55). Those allegations identify the general documents at issue, but they do not plead facts showing that Kootenai Title made a knowingly false representation by mail or wire, that it knew the alleged HOA-governance representation was false when made, or that it used the mail or wires with specific intent to defraud Plaintiff. Nor does the First Amended Complaint identify the specific person who allegedly gave the "administrative only" assurance, the exact content of that assurance, the medium through which it was made, or facts showing that Kootenai Title or any other Defendant made that statement with fraudulent intent. The existence of revised closing documents and Plaintiff's asserted reliance do not, without particularized fraud allegations, constitute mail or wire fraud predicates.

Fourth, the post-closing enforcement allegations likewise are not pleaded as particularized mail or wire fraud predicates. Although Plaintiff attributes certain enforcement communications to particular attorneys or law firms in other portions of the First Amended Complaint, the predicate-act section largely attributes the alleged post-closing communications to groups— "Defendants," "enterprise counsel," "SMOA leadership," and "ABC Management"—without pleading each Defendant's role in each alleged predicate act with Rule 9(b) particularity. Similarly, Plaintiff's First Amended Complaint does generally identify certain documents, dates, and alleged statements or omissions.

The problem is not that the First Amended Complaint contains no factual detail. The problem is that Plaintiff does not plead each alleged mail or wire fraud predicate as a discrete fraudulent communication with the particularity Rule 9(b) requires. For each alleged predicate,

**MEMORANDUM DECISION AND ORDER - 15**

Plaintiff must identify the sender, recipient, date, medium, precise statement or omission, why that statement or omission was false or misleading when made, facts supporting the speaker's knowledge and specific intent to defraud, and each Defendant's role in the alleged fraudulent transmission. The First Amended Complaint instead identifies broad documents and episodes, characterizes them as fraudulent or coercive, and asks the Court to infer a racketeering scheme from Defendants' participation in the same real-estate, HOA, title, property-management, and litigation dispute.

In summary, Plaintiff has not plausibly alleged the existence of a distinct enterprise; he has not alleged any predicate acts with sufficient particularity under Rule 9(b); and, as a result, he has not alleged a pattern of racketeering activity. Because Plaintiff has not plausibly alleged a substantive RICO violation under § 1962(c), his RICO conspiracy claim under § 1962(d) also fails. *See Sanford*, 625 F.3d at 559. Accordingly, the Court grants the moving Defendants' motions to dismiss Plaintiff's federal RICO claim under Rule 12(b)(6).

This dismissal applies to all Defendants regardless of whether they moved under Rule 12(b)(6). With respect to Plaintiff's federal RICO claim, all Defendants are similarly situated. A court "may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants . . . ." *Silverton v. Dep't of Treasury of U. S. of Am.*, 644 F.2d 1341, 1345 (9th Cir. 1981).

This conclusion is consistent with the Court's recent decision in *Wittwer v. J&J Development, LLC*, Case No. 2:25-cv-00395-AKB at 15–16 (D. Idaho Apr. 16, 2026). There, the plaintiffs' proposed amended pleading added defendants, removed numerous "upon information and belief" allegations, characterized certain defendants as structural enterprise participants, and added additional factual allegations, but the amendments still did not cure the failure to plead a

MEMORANDUM DECISION AND ORDER - 16

cohesive RICO enterprise or predicate acts with Rule 9(b) particularity. As in *Wittwer*, Plaintiff's First Amended Complaint adds factual allegations and defendant-specific labels, but those additions do not cure the same core RICO deficiencies.

This matters because Plaintiff amended his complaint after receiving various motions to dismiss which, taken together, are broader than the Court's reasoning here. The failure to plead an enterprise and predicate fraudulent acts with particularity was an issue Plaintiff apparently recognized and attempted to remedy. In response, the relevant motions to dismiss were amended and renewed. Plaintiff did not respond and has not requested leave to amend for a second time. It is difficult for the Court to understand this failure to mean anything other than Plaintiff does not contest the validity of those renewed motions or lacks further factual information to amend his pleading. The later Notice of Supplemental Filing is not a proposed amended pleading and does not address the legal deficiencies raised in the motions.

Under these circumstances, the Court will not continue this action through another amendment cycle. Accordingly, and notwithstanding that Plaintiff proceeds pro se, the Court will not grant leave to amend in this action. At the same time, because Plaintiff is proceeding pro se, the Court dismisses his RICO claim without prejudice. The dismissal is without prejudice to Plaintiff filing a new action if he can allege facts sufficient to state a claim within the applicable limitations period and consistent with Rule 11.

## C.      Supplemental Jurisdiction – State Law Claims

To the extent Plaintiff asserts remaining state-law claims, they include claims labeled fraud/fraudulent misrepresentation, malicious prosecution, abuse of process/fraud on the court, civil conspiracy, negligence/negligent misrepresentation, intentional infliction of emotional distress, and violations of the Idaho Consumer Protection Act (Dkt. 54 at 1). The Court may

**MEMORANDUM DECISION AND ORDER - 17**

adjudicate those state law claims only if it retains supplemental jurisdiction under 28 U.S.C. § 1367.

The doctrine of supplemental jurisdiction "allow[s] courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds by statute*, 28 U.S.C. § 1367. When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997). Section 1367 provides that, with certain exceptions, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

A district court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, the only claim over which the Court has original jurisdiction is Plaintiff's federal RICO claim. Because the Court dismisses Plaintiff's only federal claim at the pleading stage, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims under 28 U.S.C. § 1367(c)(3). Those claims are dismissed without prejudice. The Court expresses no opinion on the merits of Plaintiff's state law claims.

**MEMORANDUM DECISION AND ORDER - 18**

## IV.   ORDER

**IT IS ORDERED that**:

1. Defendant Lukins & Annis, P.S.'s Motion to Dismiss, as joined and supplemented, (Dkts. 31, 43, 48, 58, 61, 62), is **GRANTED IN PART** as to Plaintiff's federal RICO claim.

2. Defendants Peter J. Smith IV and Malek & Malek, PLLC's Motion to Dismiss the First Amended Complaint (Dkt. 57) is **GRANTED IN PART** as to Plaintiff's federal RICO claim.

3. Defendant Kootenai Title Company's Motion to Dismiss the First Amended Complaint (Dkt. 60) is **GRANTED IN PART** as to Plaintiff's federal RICO claim.

4. Defendant Hallmark Homes' Motion to Dismiss the First Amended Complaint and Notice of Joinder (Dkt. 70) is **GRANTED IN PART** as to Plaintiff's federal RICO claim.

5. Defendant Mark Worth's Motion to Dismiss the First Amended Complaint (Dkt. 73) is **GRANTED IN PART** as to Plaintiff's federal RICO claim.

6. Plaintiff's federal RICO claim under 18 U.S.C. § 1962(a)–(d) is **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

7. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(c)(3). Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE**. The limitations period for those claims is tolled for thirty days after dismissal under 28 U.S.C. § 1367(d), unless Idaho law provides a longer tolling period.

8.  The motions to dismiss directed at Plaintiff's original Complaint (Dkts. 28, 29, 37, 50, 52) are **DENIED AS MOOT**.

9.  All remaining pending motions, including Dkts. 2, 4, 18, 21, 22, 64, 65, 66, 67, 68, and 69, are **DENIED AS MOOT**.

10. The Clerk of Court is directed to enter judgment and close this case.

DATED: May 15, 2026

*Amanda K. Brailsford*
**Amanda K. Brailsford**
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 20